## UNITED STATES ex rel. VINDICATOR CONSOLIDATED GOLD MINING CO. v. WILBUR, Secretary of Interior.

### No. 5195.

Court of Appeals of District of Columbia.

Submitted Oct. 9, 1930.

Decided Feb. 2, 1931.

See, also, Marshall v. Wilbur, 60 App. D. C. 59, 47 F.(2d) 421.

Edgar Watkins, of Atlanta, Ga., and J. C. Trimble, of Washington, D. C., for appellant.

O. H. Graves and Victor H. Wallace, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, ROBB, Associate Justice, and WHEAT, Chief Jus-

tice of the Supreme Court of the District of Columbia.

WHEAT, Acting Associate Justice.

This is an appeal from a judgment of the Supreme Court of the District, dismissing a petition of the appellant which sought a review, pursuant to the Act of February 13, 1929 (chapter 182, 45 Stat. 1166), of the decision of the Secretary of the Interior in rejecting in part a claim filed under section 5 of the Act of March 2, 1919 (chapter 94, 40 Stat. 1272, 1274), commonly called the War Minerals Relief Act.

The statutory provisions are the same as those involved in the case of the Crimora Manganese Corporation v. Wilbur, Secretary, 60 App. D. C. 55. 47 F.(2d) 417, decided this day.

The case was submitted to the court below upon petition and answer, from which the following facts appear:

Between the 6th of April, 1917, and the 11th of November, 1918, in preparing to produce, and in producing, chrome, in compliance with the request of the Department of the Interior, the Vindicator Consolidated Gold Mining Company, hereinafter referred to as the Vindicator Company, expended and incurred obligations for and upon property containing chrome in sufficient quantities to be of commercial importance. It filed its claim with the Secretary of the Interior, seeking an award for its net losses, and claimed as part thereof the sum of $16,259 as an expenditure for the purchase of the property. The Secretary made an award, but specifically denied anything for that item of loss. The petition alleges that the moneys expended for the purchase of the property constituted a net loss. After categorically denying that allegation, the Secretary in his answer says: "That his denial in this respect is explained fully in the last paragraph of this answer."

In the last paragraph of the answer the explanation made of the denial is in substance that it appeared that the petitioner still retains the fee-simple title to the real property which it previously had purchased, known as the Deer Creek Mine; that, where real property was purchased in fee simple, no loss was suffered by the purchaser because of payment of the purchase price so long as he retained the title for which he had paid; that, under such circumstances, it necessarily appeared as a matter of fact that the petitioner had suffered no loss by reason of the money expended for the title; that the Act of March 2, 1919, did not contemplate reimbursement for amounts paid for the purchase of real property; and that a loss sustained in that way was not within the purview of the act. The answer also states:

"It is admitted herein that money was paid by relator in the purchase of property, and if the court holds that losses were sustained thereby and are allowable in cases where claimant retains title, the amount thereof will be subsequently determined by the Secretary of the Interior."

It is apparent, therefore, that the denial of the allegation that the amount paid by the petitioner for the property constituted a net loss, coupled with the explanation, raises an issue of law, not of fact; that is, the Secretary, without examining the facts, held as matter of law that no loss could be suffered, within the meaning of the act, by one who had bought property and still retained title thereto. That is the sole question presented for our consideration, and the pleadings were obviously drawn for the purpose of raising it squarely and obtaining a decision thereon.

This question was considered by this court in the case of Work v. United States ex rel. Rives, 54 App. D. C. 84, 295 F. 225. In that case, it appeared that Rives, a claimant under the act, had agreed to buy two tracts of manganese land, and had made an initial payment of $9,600 on the purchase price. On Armistice Day there was due on the purchase price the further sum of $11,000, but, since the demand for manganese had ceased, the land was not worth more than $1,000. To save himself further loss, Rives elected under his contract to lose as liquidated damages the sum he had paid on the purchase, which sum became a net loss to him. The Secretary rejected this item on the ground that money spent in the purchase of real estate was not repayable under the statutory provisions. This court held that view to be erroneous, and, after considering the question carefully, said, at page 86 of 54 App. D. C., 295 F. 225, 227:

"We are satisfied that under the statute it was the intention of Congress to allow for losses incurred by reason of money paid for property which contained manganese."

The Rives Case differs from the case at bar in that there was no doubt that an actual loss had been suffered by Rives, as he had forfeited the money which he had paid on the purchase price, and had nothing to show for

it, while the appellant here has paid for the property and still owns it.

The Rives Case, however, was not decided upon any such narrow ground. The question whether the statute authorizes the allowance of claims based upon money spent in purchasing land was considered in its broad general aspects. The officials of the Interior Department had, from the beginning, held that such expenditures were not reimbursable under the law. The question was fully presented and considered, the reasoning is equally applicable to the facts now before us, and upon them we reach the same conclusion.

It would be too narrow a construction of the act to hold that in no case could a loss be allowed while the claimant retains title to the property. In some cases it might be possible to show with reasonable certainty that the property was of no substantial value, and perhaps unsalable. We have heard of property so undesirable that it could not even be given away. Whether a net loss in the present case has or has not been suffered is a question of fact, to be decided as any other question of fact.

The judgment should therefore be reversed, and the cause is remanded for further proceedings not inconsistent herewith.